UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Guidry, et al                                              Civil Action No. 6:10-cv-0868

versus                                                       Judge Tucker L. Melançon

Chevron U.S.A., Inc.                          Magistrate Judge Patrick J. Hanna

**MEMORANDUM RULING**

_____Before the Court is a Motion For Summary Judgment To Dismiss Complaint Of

Intervention [Rec. Doc. 68] filed by plaintiffs, Branden Guidry and Terra Nicole Richard

Guidry, "individually and as administrators of the estate of their minor children, Bree Guidry,

Brennon Guidry, Meagan Guidry, Jacob Guidry, Haylee Guidry and Keegan Guidry," in

which plaintiffs seek dismissal of the Complaint of Intervention filed by Liberty Mutual

Insurance Company ("Liberty"), a Response filed by Chevron USA, Inc. ("Chevron") [Rec.

Doc. 72],[1] a Memorandum in Opposition filed by Liberty [Rec. Doc. 73], and plaintiffs'

Reply thereto [Rec. Doc. 76].  For the following reasons, the motion will be granted.

*Background*

This case arises from an accident alleged to have occurred on November 19, 2009

while Branden Guidry was working on a Chevron platform located in Eugene Island 24A for

Kelly Completion Services ("KCS"), a division of Intertek Caleb Brett ("Intertek").[2]  *R. 1,*

*Complaint*; *R. 68, Exh. A, pp. 1-2*.  Guidry alleges he stepped on a drain cover which

collapsed and caused him to fall, resulting in injuries to his low back and his knee.  *R. 1.*

---

[1]  In its Response, Chevron states that it "does not oppose Plaintiffs' motion, but wants to merely clarify certain points."  *R. 72*.

[2] Plaintiffs' statement of undisputed facts provides that Guidry "was employed by Intertek Caleb Brett a/k/a KCS - Kelley Completion Services a/k/a Testing Holding USA Inc.  *R. 68-2, #1*. The record provides that, in an October 27, 2010 letter to Chevron from Liberty's Claims Case Manager, Genevieve Knauf, Liberty stated, "KCS [] became a division of Intertek Caleb Brett on or about August 1, 2005," after the October 15, 1991 Master Service Agreement between Chevron and KCS.  *R. 72-3, Exh. B*.  The Court will therefore refer to Guidry's employer as "KCS."

Plaintiffs filed this action against Chevron on May 27, 2010 pursuant to the Outer Continental Shelf Lands Act and General Maritime jurisdiction alleging that Chevron's negligence, in its capacity as the platform owner, caused Guidry to suffer severe injuries and damages including lost wages, lost earning capacity, pain and suffering (physical and emotional), past and future medical expenses. *R. 1, ¶ 5.* Plaintiffs further allege loss of consortium on behalf of Guidry's spouse and six children.

On September 24, 2010, Liberty, the workers' compensation carrier of Guidry's employer filed its Complaint of Intervention naming Chevron as the sole defendant-in-intervention and asserting a right of subrogation for the disability compensation benefits and medical expenses paid to Guidry as well as any future disability payments and medical expenses that may be owed in the event judgment is rendered in this proceeding in favor of plaintiffs against Chevron. *R. 14, ¶¶ 1-6.* On June 6, 2011, plaintiff filed the motion before the Court contending that Liberty's Complaint of Intervention in this case should be dismissed because Liberty  contractually waived its rights of subrogation of its claim for reimbursement of workers' compensation benefits paid to Guidry.

## II.  Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc).  Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-

moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(c). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a); *Celotex*

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

*Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party.  *Id.*

### III.  Analysis

The record indicates that Guidry was working in the course and scope of his employment with KCS performing work for Chevron pursuant to a Master Service Order and Agreement dated October 15, 1991 ("MSA") between Chevron and KCS.  *R. 68, Exh. A; R. 22, Parties 26F Rpt., # 4&5.*  Paragraph 7. a. (I) of the MSA required KCS to procure worker's compensation insurance covering liabilities arising under the Longshore and Harbor Worker's Compensation Act and the Outer Continental Shelf Lands Act.  *Id. at p. 4.* Paragraph 7 b. of the MSA required policies provided for in paragraph 7 to contain an endorsement waiving underwriter's right of subrogation against Chevron:

> The policies providing the insurance called for in paragraphs 7 a. (ii), (iii), (iv), (v), and (vi) shall expressly include [Chevron] as additional assured, and all policies provided for in paragraph 7 a. shall contain an endorsement waiving underwriters' rights of subrogation against [Chevron].

*Id. at p. 5.*

Liberty issued a Worker's Compensation And Employer's Liability Policy ("Policy") to "Testing Holdings USA, Inc." as Named Insured, "Policy Number WA7-69D-437715-039, Effective Date 5/1/2009 to 5/1/2010."  *Id. at Exh. B., pp. 1, 77-78.*  The Policy's "Name Of Insured Endorsement" provides that "Kelley Completion Services, Intertek Testing USA, Inc., Intertek Testing Services Holdings, LTD, Intertek Testing Services NA, Inc., Intertek International, Inc., Intertek Eagle, LLC, Caleb Brett USA dba Alta Analytical Laboratory and Caleb Brett (USA), Inc." are also Named Insureds under the Policy.  *Id. at pp. 74-75.*  The Policy includes an "Alternate Employer Endorsement" and "Waiver Of Our Right To Recover From Others Endorsement" which plaintiffs' assert met the requirements in the

MSA, including naming Chevron as an alternate employer and assured and waiving Liberty's

subrogation rights against Chevron. *Id., at pp. 81, 86.* The contract of insurance states in

pertinent part:

"Alternate Employer Endorsement

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in item 2 of the schedule. Part One (Worker's Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the ultimate employer is insured....

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer....

Schedule

1. Alternate Employer
   Any Alternate Employer where required by written contract or agreement."

and

"WAIVER OF OUR RIGHT TO RECOVER
FROM OTHERS ENDORSEMENT

We have the right recover our payments form anyone liable for any injury covered by this policy. We will not enforce our rights against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)....

Schedule

Where required by contract or written agreement, prior to loss."

*R. 68-2, Stmt Fact, ## 9 & 10, Exh. B, Policy, pp. 81 & 86.*

Plaintiffs contend that, despite its subrogation waiver, Liberty filed a Complaint of

Intervention naming Chevron as sole defendant-in-intervention, asserting "rights of

subrogation" for workers' compensation benefits and medical expenses made to and on

behalf of Branden Guidry. Plaintiffs assert, under the facts of this case, Liberty's waiver of

subrogation in favor of Chevron is enforceable, thus the Complaint of Intervention should

5

be dismissed.   Liberty initially argues that the existence of several issues of material fact related to the MSA requires the Court to deny plaintiffs' motion.  Liberty further argues that plaintiffs' motion for summary judgment should be denied because its waiver of subrogation is unenforceable under the Louisiana Oilfield Anti Indemnity Act ("LOAIA").  The Court will address these issues in turn.

### 1.  Whether the MSA applies

Liberty first contends that the MSA, Exh. A to plaintiffs' motion for summary judgment, is not admissible as it is not authenticated by an affidavit or certification as required by Fed. R. Civ. P. 56.  Rule 56(c)(1)(A) provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials "   The record demonstrates that the MSA was made a part of the record of this proceeding pursuant to the initial disclosures required under Rule 26(f) executed by all parties, including Liberty.  As the MSA is in fact part of the record, the Court will consider it in resolving plaintiffs' motion.  *R. 22, pp. 15-22.  See*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Liberty next contends that Testing Holding USA is "the insured identified on the Liberty Mutual policy" but is not a party to the MSA, and because plaintiffs have not demonstrated that "Intertek, KCS and Testing Holding USA are all one and the same corporation" and there is no language binding the parent of subsidiary companies affiliated with KCS to the MSA, they have failed to meet their burden for summary judgment.  Contrary to Liberty's contentions, while Testing Holdings, USA is a named insured under the Policy, the Policy provides that KCS as well as multiple "Intertek" and "Caleb Brett"

entities are also named insureds. *R. 68, Exh. B, pp. 74-75.*  In its Complaint of Intervention,

Liberty's allegations contradict its own contention:

> Intervenor in the regular course of its business issued a policy of workers' compensation insurance in favor of TESTING HOLDINGS USA, INC., covering its liability to its employees for workers' compensation under the provisions of the Workers' Compensation Act; said policy was in full force and effect and covered Branden Guidry as an employer engaged in hazardous occupation on or about November 19, 2009....

*R. 14, ¶ 2.*  The record contains correspondence from Liberty to Chevron dated October 27,

2010 which states as follows:

> The policy contains a Broad Form Named Insured Endorsement at No. 1 that confers additional named insured status on those organizations expressly named on the Endorsement, which includes Caleb Brett.  Further, the endorsement also confers additional named insured status on those organizations which are owned by more than 50% by a named insured under the policy.  On information and belief, Intertek Caleb Brett is owned by more than 50% by Caleb Brett, and KCS is a division if Intertek Caleb Brett.

*R. 72-3, Exh. B.*  Additionally,  the initial disclosures filed pursuant to Rule 26(f), plaintiffs,

Chevron and Liberty, stipulated that Guidry "was a payroll employee of KCS-Kelley" and

that Liberty "is the worker's compensation carrier of KCS-Kelley."  *R. 22, ¶ 10, A & I.*  As

the MSA defines "Contractor" as "Kelly Completion Services," Chevron concedes it

contracted with KCS to provide workers' compensation insurance to Guidry to work on its

platform and as Liberty has previously contradicted its current position on the issue,

plaintiffs' assertions relating to the Policy and the MSA will be considered by the Court.  *Id.*

*at Exh. A.*

Finally, Liberty contends that because plaintiffs failed to plead the issue of the

subrogation waiver as an affirmative defense in their answer to Liberty's Complaint of

Intervention, the Court should prohibit them from presenting the issue in their motion for

summary judgment.   Liberty's Complaint of Intervention names only Chevron as a

defendant-in-intervention.  Chevron filed an answer to Liberty's Intervention and asserted

"waiver" as its "Second Defense."  *R. 16.*  Nothing further need be said by the Court to address the Liberty's frivolous raising of this issue.

    *2.  Whether the MSA's waiver of subrogation provision is invalid under LOAIA*

    The Louisiana Oilfield Anti-Indemnity Act, La. R.S. 9:2780 ("LOAIA"), was designed to alleviate the inequity "foisted upon certain contractors by agreements which purported to grant indemnification to the oil companies for their own negligence or strict liability." *Fontenot v. Chevron U.S.A. Inc.*, 676 So.2d 557, 562 (La.1996) (citation omitted). "The clear intent of the LOAIA is to protect oilfield contractors and their employees from adhesionary contracts requiring contractors to indemnify oil companies for their negligence or fault."  *American Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 269 (5th Cir. 2005).  Thus, "LOAIA was also designed to protect oil contractor employees."  *Hudson v. Forest Oil Corp.*, 372 F.3d 742, 744 (5th Cir. 2004) (citing *Fontenot* at 563).[4]

    "Subsection (B) of LOAIA states:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee....

La.Rev.Stat. § 9:2780(B).  Thus, both master service contracts between a contractor and an oil company and insurance policies between a contractor or an oil company and an insurance company, which contain indemnification provisions, are presumptively covered by LOAIA. In addition to the prohibition on indemnification clauses, Subsection (G) of the LOAIA provides:

---

    [4] In this case "contractor" refers to KCS, "contractor employee" refers to Guidry and "oil company" refers to Chevron.

> Any provision in any agreement ... which requires *waivers of subrogation*, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

*Id*. § 9:2780(G) (emphasis added)." *Hudson*, at 744-745.

Courts employ a two-part test to determine whether LOAIA generally applies to an agreement's provisions: (1) whether the agreement pertains to an oil, gas, or water well; and (2) whether the agreement relates to the exploration, development, production, or transportation of oil, gas, or water. *Hudson*, at 745 (citing *Fontenot*, 564). The parties agree that the provisions of the MSA satisfy this test. Further, all parties implicitly concede in their arguments to the Court that Louisiana law applies in this case and that LOAIA generally applies to the MSA in this case. As to the waiver provision, however, Liberty argues that LOAIA voids the waiver provision of the MSA, while plaintiffs and Chevron maintain that the waiver provision is enforceable and is not invalidated by LOAIA.

Citing *Fontenot* and *Hudson*, plaintiffs contend that a waiver of a subrogation clause is enforceable under Louisiana law and does not violate LOAIA where the subrogation clause is not enforced in conjunction with an indemnity obligation, because there is no shift in liability from the tortfeasor oil company to the contractor in circumvention of LOAIA. In its response to plaintiffs' motion, Chevron states that, because its indemnity rights do not vest until a judgment has been rendered, it has not filed suit against KCS to enforce the indemnity and defense provisions in the MSA, but has made written demand on KCS which Liberty, who in addition to being the workers' compensation insurer is also the liability insurer of KCS, has denied. *R. 72, Stmt of Facts, ¶ II(2)*. Chevron further states that it "will make a decision regarding litigating its right to contractual indemnity and recovery of defense cost from KCS" pending the outcome of the Court's decision in the motion at bar. *R. 72.*

In *Fontenot*, the Louisiana Supreme Court considered the validity of a waiver of

subrogation as a defense to the insurer's intervention, rather than as an indemnity provision - precisely the situation here. The *Fontenot* court reasoned, "the [LOAIA's] prohibition of a waiver of subrogation clause only benefits the oil company, or indemnitee, when it is applied in conjunction with an indemnification clause." *Fontenot*, 676 so.2d at 564. In *Hudson*, the Fifth Circuit stated, "[T]he most important aspect of *Fontenot* is that 'voiding a waiver of subrogation clause only achieves the purpose of [LOAIA] when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause.'" *Hudson*, at 747.

Liberty argues that *Fontenot* and *Hudson* are distinguishable in that there was no finding of liability against the oil companies involved in either case - in *Fontenot* there was a settlement prior to adjudication of the merits and in *Hudson* there was a finding of tort immunity in a motion for summary judgment. Thus, Liberty contends that because, at this point in the litigation, there has been no adjudication of liability and Chevron has not filed suit against KCS under the indemnification clause, plaintiffs cannot establish that LOAIA will not invalidate its waiver of subrogation. In essence, Liberty contends that plaintiffs' motion to dismiss its Complaint of Intervention is premature and cannot be decided until judgment has been rendered in this case. The Court disagrees.

The Louisiana Supreme Court has held that the LOAIA completely "nullifies any provision in any agreement that requires defense and/or indemnification where there is any negligence or fault on the part of the indemnitee [oil company]." *Meloy v. Conoco, Inc.*, 504 So.2d 833, 838 (La.1987). However, in *Meloy*, the court carved out an exception to LOAIA in holding that, after trial on the merits, an indemnitee [oil company] who was not at fault may recover cost of defense from the indemnitor [contractor]. *Meloy*, 504 So.2d at 839 ("If it is established at trial that there is no 'negligence or fault on the part of the indemnitee,' the

10

Act does not prohibit indemnification for cost of defense."). In *Tanksley v. Gulf Oil Corp*, 848 F.2d 515 (5th Cir. 1988), the Fifth Circuit held that an oil company cannot invoke an indemnification agreement with a contractor after settling an injured worker's claims because, by settling, the oil company foreclosed its opportunity to have a court determine that it was free from fault. *Id.* at 517; *see also, American Home Assur. Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 270 (5th Cir. 2005). Thus, under the *Meloy* exception, if Chevron is found free from fault after trial on the merits, it would be entitled to recover costs of defense, including attorney's fees from KCS. On the other hand, if Chevron settles plaintiffs' claims against it, *Tanksley* prohibits the use of the *Meloy* exception because liability has not been determined.

Under the provisions of the MSA, KCS agreed to indemnify Chevron for the negligence of its employees, in this case Guidry, and in the Policy purchased by KCS, Liberty agreed to waive its subrogation claim against Chevron in the event of Chevron's negligence. The parties concede that a waiver of subrogation is enforceable under Louisiana law and that LOAIA applies to this case. While Liberty contends it is premature to dismiss its intervention before judgment is rendered, the Court finds that Liberty would be unable to pursue its workers' compensation intervention under any of the three possible scenarios related to the disposition of this case, through either trial or settlement.

First, in the event Chevron prevails at trial and is found free from fault, then under the *Meloy* exception, Chevron would be entitled to recover costs of defense, including attorney's fees from KCS and its general liability insurer pursuant to the MSA.[5] Second, if a settlement is consummated in this case, Liberty would owe no defense costs as there would be no

---

[5] Chevron represents that Liberty "issued a separate general liability policy to KCS, in part, Policy No. TB1-691-437715-119." *R. 72, FN. 2.*

finding of liability, and as the court held in *Fontenot*, Liberty's waiver of subrogation clause would be valid under LOAIA.  It is the third scenario that is the actual issue before the Court - what is the outcome of Liberty's intervention if judgment is entered after a trial on the merits in favor of plaintiffs.

In *Hudson,* the insurer contended that the waiver of the subrogation clause was invalid under the LOAIA. The Fifth Circuit disagreed, finding that invalidating a subrogation waiver does not promote the purpose of the LOAIA and that *Fontenot* applied.  Significantly, the court cited the Louisiana Supreme Court's statements suggesting that a waiver of subrogation provision in a workers' compensation insurance policy primarily invoked on its own by the insurer (without the oil company making an indemnification demand) should not fall under LOAIA:

> While it may be true that the indemnity clause and the required waiver of subrogation in the workover contract are invalid vis a vis [the contractor] and [the oil company], that is of no moment here for several reasons. First, we are not concerned today with the workover contract but rather we are only addressing the insurance contract between [the insurer] and [the contractor]. Second, [the contractor] was the party which undertook the obligations of indemnification and waiver of subrogation in the workover contract, but [the contractor] is not before us at this time asking for any relief. Third, the party which is asking for relief, [the insurer], was not a party to the workover contract, and fourth, [the insurer] received compensation for waiving its subrogation rights. The Act's purposes are not served by giving the benefit of the waiver of subrogation to [the insurer] which was paid for its waiver. Our conclusion might be otherwise if we were considering [the contractors'] request for relief from any of the obligations it undertook in the workover contract because of the statutory invalidity of these obligations.

> [*Fontenot*] at 567.

*Hudson*, at 746.   Here, because it is undisputed that Chevron has not filed suit against KCS to enforce the indemnity and defense provisions contained in the MSA that flow from KCS to Chevron, under the reasoning of *Hudson,* Liberty's waiver of subrogation in the insurance

Policy purchased by KCS[6] does not violate the LOAIA and should therefore be enforced.

As to the third scenario, in the event Chevron is adjudicated to be at fault in this proceeding it is well established under existing jurisprudence that any claim Chevron might file against KCS under the MSA's indemnification clause would be precluded under LOAIA. Hence, as recognized by Chevron in its response, such action would be futile. *R. 72, FN. 5.* Thus, by not filing an action against KCS under the indemnification clause, the contractual waiver of subrogation would be enforceable under the reasoning of *Fontenot* and *Hudson* and would preclude Liberty from recouping workers' compensation payments from Chevron.

Therefore, under any of the three possible scenarios, Liberty could not prevail in its Complaint of Intervention against Chevron.

### *Conclusion*

For the foregoing reasons the Court will grant plaintiffs' motion for summary judgment and dismiss Liberty's Complaint of Intervention against Chevron.

---

[6] Liberty also contends that unlike the policy in *Fontenot* which listed the additional premium charged for the waiver of subrogation in that case, the Liberty Policy does not indicate that KCS paid for the waiver and therefore *Fontenot* does not apply. The Court has held that Liberty issued the subject Policy to KCS. While it is axiomatic that an insurance company such as Liberty would not issue a policy without adequate compensation for the contents of the policy, the Court notes that the Alternate Employer Endorsement of the Liberty Policy provides, "Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer [Chevron]." *R. 68, Stmt Fact, # 9.* Therefore, Liberty's contention as to the amount of premium paid is without merit.